Filed 2/19/14  In re G.V. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re G.V., Jr., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>M.C. et al.,<br><br>    Defendants and Appellants. | G048712<br><br>(Super. Ct. No. DP022677)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Deborah C. Servino, Judge.  Affirmed.

Megan Turkat Schirn, under appointment by the Court of Appeal, for Defendant and Appellant M.C.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant G.V., Sr.

Nicholas S. Chrisos, County Counsel, Karen L. Christensen and Aurelio Torre, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for the Minor.

\*          \*          \*

M.C. (mother) and G.V., Sr., (father) appeal from the juvenile court's termination of their parental rights to their son G.V., Jr., (child) at a hearing under Welfare and Institutions Code section 366.26 (all further statutory references are to this code). Mother's sole contention is the court erred in summarily denying her section 388 modification petition (section 388 petition). Father does not raise any independent grounds, but merely argues if mother's appeal is found to have merit, we must also reverse as to him. We find no error and affirm the judgment as to both parents.

## FACTS AND PROCEDURAL BACKGROUND

This is our second opinion in this case. Our first opinion denied father's petition for writ of mandate challenging the sufficiency of the evidence to support the March 6, 2013 order denying both parents reunification services under section 361.5, subdivisions (b)(5) and (b)(6). (*G.V. v. Superior Court* (June 27, 2013, G048140) [nonpub. opn.].) Mother was not a party to those writ of mandate proceedings.[1]

At the March 6, 2013 disposition hearing the juvenile court also declared the child to be a dependent, removed the child from parental custody, and set a permanency planning hearing under section 366.26 (.26 hearing) for July 3, 2013. The facts and procedural background which led to these orders are summarized in our prior

---

[1] Mother filed a notice of intent to file a writ petition, which she later withdrew.

opinion and need not be repeated here. It is sufficient to note the juvenile court found the child had suffered severe nonaccidental physical harm during the first three months of his life, both parents denied inflicting that harm, each parent pointed the finger at the other, and "either they personally inflicted it on the child or they knew or reasonably should have known."

On the date set for the .26 hearing, mother filed a section 388 petition seeking return of the child to her custody or, in the alternative, a 60-day visit and reinstatement of reunification services. Mother's supporting declaration stated that as of July 3, 2013 she had: (1) completed 35 of 52 weeks in the child abuse treatment program, begun on October 8, 2012; (2) completed the 26-week parenting component program, begun in late 2012; (3) continued participating in the weekly counseling services, begun on November 27, 2012; and (4) never missed any of the permitted twice weekly two-hour visits with the child, they were affectionate with each other and the child was bonded to her.

Her declaration further stated: "Based on what I have learned in my [child abuse treatment] program, I believe that the injury to my son's leg was not accidental. The fact that the father has lied about me hitting him in the past, shows me that the father clearly lied about how my son was injured. I am no longer with the father because I believe that he intentionally harmed my son." Mother also declared she had, "learned the difference between punishment and discipline." "[A]ddressed the original problems that led to [G.] becoming a dependent child." "[And] shown that given the opportunity I could complete future services if they were offered to me."

The juvenile court entertained argument on whether the section 388 petition stated a prima facie case which would warrant an evidentiary hearing. Counsel for mother argued the section 388 petition showed there were changed circumstances, and the requested modification was in the best interests of the child. Counsel for the child and the Orange County Social Services Agency (SSA) both argued the section 388

3

petition did not show changed or even changing circumstances, or that the requested modification was in the best interests of the child.

The juvenile court summarily denied the section 388 petition without conducting an evidentiary hearing, and found, "a prima facie case has not been made . . . the request does not state . . . a change of circumstances, and . . . the proposed order does not promote the best interests of the child."

At the conclusion of the .26 hearing on July 11, 2013, the court terminated the parental rights of both parents and ordered adoption as the permanent plan. This appeal followed.

## DISCUSSION

Under section 388, a juvenile court may modify its orders if the petitioner shows, by a preponderance of the evidence, there are (1) changed circumstances or new evidence that support a modification; and (2) the modification would be in the best interests of the child. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 316-317 (*Stephanie M.*); *In re Zachary G.* (1999) 77 Cal.App.4th 799, 805, 806 (*Zachary G.*).) To obtain a hearing on a section 388 petition, the petitioner needs only to make a prima facie showing of these two elements, and "the petition should be liberally construed in favor of granting a hearing to consider the parent's request. [Citation.]" (*Zachary G.*, *supra*, 77 Cal.App.4th at p. 806; see *In re Marilyn H.* (1993) 5 Cal.4th 295, 309-310 (*Marilyn H.*).)

But the burden is on the party seeking modification (*Marilyn H.*, *supra*, 54 Cal.4th at p. 309), and "if the liberally construed allegations of the petition do not make a prima facie showing of changed circumstances and that the proposed [modification is in] the best interests of the child, the court need not order a hearing on the petition. [Citations.]" (*Zachary G.*, *supra,* 77 Cal.App.4th at p. 806; see also *In re Kimberly F.* (1997) 56 Cal.App.4th 519, 529 (*Kimberly F.*).)

A section 388 petition " is addressed to the sound discretion of the juvenile court and its decision will not be disturbed on appeal in the absence of a clear abuse of

4

discretion.  [Citations.]"  (*In re Jasmon O.* (1994) 8 Cal.4th 398, 415-416; see *Stephanie M.*, *supra*, 7 Cal.4th at pp. 318-319; *Zachary G.*, *supra*, 77 Cal.App.4th at p. 808.)

*1.  Changed Circumstances*

Mother claims her section 388 petition made the prima facie showing required to warrant an evidentiary hearing.  Not so.  As a threshold matter, we note mother did not seek extraordinary writ review of  the juvenile court's order denying her reunification services, and so cannot implicitly question the correctness of that order now. (Cal. Rules of Court, rule 5.695(h)(18).)

Mother asserts as changed circumstances her "documented progress in services."  However, the bulk of mother's supporting declaration refers to her accomplishments before the disposition hearing.  She was actively participating in all of these services prior to the disposition hearing and merely continued to do so after.  For example, with respect to the 52-week child abuse treatment program, mother completed approximately 21 weeks before and 14 weeks after the disposition hearing.  Similarly, as to the 26-week parenting component program, mother completed about 13 weeks prior to and 13 weeks subsequent to the disposition hearing.  Finally, mother attended 15 weeks of counseling before the disposition hearing and 17 weeks after.

Mother also asserts as changed circumstances that, as a result of her participation in these services, she accepted "full responsibility for her actions," separated from father, had no intention of reunifying with him, and no longer suffered from postpartum depression.  Yet again all of these circumstances existed at the time of the disposition hearing, and changed little thereafter.  In fact, mother's current claims are remarkably similar to her testimony on these points at the disposition hearing.

Finally, mother claims an evidentiary hearing would have permitted her to present third party evidence and testimony regarding "whether her counseling services showed that reabuse was likely to be prevented if mother was given reunification services."  Here she relies on the form letter which verified her attendance in the child

5

abuse treatment program, and stated, "Counselors are not qualified to . . . give expert testimony, or make recommendations to the court.  If you need this type of service, a referral will be provided."  But she offered no such expert testimony or any evidence she ever even requested this type of service.

In short, we agree with the juvenile court.  Mother failed to make a prima facie showing of changed circumstances sufficient to warrant a modification of the challenged orders.

*2. Best Interests of the Child*

Even assuming a prima facie case of changed circumstances was shown, mother did not make a prima facie showing that undoing the prior orders is in the best interests of the child.  Preliminarily we note, because mother was denied reunification services under section 361.5, subdivisions (b)(5) and (b)(6), the usual preponderance of the evidence standard does not apply here.  Instead, the juvenile court was only permitted to modify the prior orders if it found "by clear and convincing evidence that the proposed change is in the best interests of the child."  (§ 388, subd. (a)(2).)

"Family Code section 7800 declares the welfare and best interest of a child is achieved '"by providing the stability and security of an adoptive home when those conditions are otherwise missing from [the child's life]."'  [Citations.]  The fact is, '[o]nce reunification services are ordered terminated [or denied], the focus shifts to the *needs of the child for permanency and stability. . . .*  [¶]  . . . The parent's interest in having an opportunity to reunify with the child is balanced against the child's need for a stable, permanent home."  (*In re Ronell* (1995) 44 Cal.App.4th 1352, 1369-1370.)  In that situation there is a rebuttable presumption continued foster care is in the best interests of the child.  (*Marilyn H.*, *supra*, 5 Cal.4th at p. 310.)  "[S]uch presumption obviously applies with even greater strength when the permanent plan is adoption rather than foster care."  (*In re Angel B*. (2002) 97 Cal.App.4th 454, 464 (*Angel B*).)

Against this backdrop, mother asserts her section 388 petition showed that returning the child to her would promote the child's "best interest because she was a good mother, took full responsibility for her actions, and had addressed the original problems that led to the dependency." She contends such statements by mother were sufficient to show the child's best interests may be promoted by holding a hearing. And she argues her section 388 petition "showed she could demonstrate 'best interests' under the *Kimberly F.* factors." We are not persuaded.

The *Kimberly F.* factors to which mother refers are: "(1) The seriousness of the problem which led to the dependency, and the reason for any continuation of that problem; (2) the strength of relative bonds between the dependent children to both parent and caretakers; and (3) the degree to which the problem may be easily removed or ameliorated, and the degree to which it actually has been." (*Kimberly F.*, *supra*, 56 Cal.App.4th at p. 532.) "While this list is not meant to be exhaustive, it does provide a reasoned and principled basis on which to evaluate a section 388 motion." (*Ibid.*) We will briefly address each of these best interest factors in turn.

With respect to the seriousness of the problem which led to the dependency, and the reason for any continuation of that problem, "[m]other concedes that the dependency was the result of her child sustaining severe physical injuries that were non-accidentally inflicted." Mother then argues "she has taken steps to prevent future abuse by no longer being with the father and having no desire to reunify with him." But this argument ignores the juvenile court finding that either both parents inflicted the injuries on the child, or both parents knew or should have known of the abuse. And even assuming mother was not an actual abuser, her continued participation in the child abuse treatment program shows little more than that which was deemed insufficient to warrant reunification efforts just four months earlier.

Regarding the strength of relative bonds between the child to mother and the caretakers, mother focuses exclusively on her relationship with the child. Mother

7

emphasizes how much she looked forward to having a child, how she visited with the child whenever allowed, and "thus made the most of her limited opportunity to preserve her relationship with her son." Mother also points out the social worker agreed mother was appropriate and nurturing in her visits, and the social worker observed the child laughing with mother while they played. All of this is true.

Still mother ignores the relationship between the child and the caretakers. The SSA report filed June 10, 2013 for the .26 hearing noted: "The child was placed with the prospective adoptive parents on June 21, 2012. During this time, the prospective adoptive parents have bonded with the child. They have provided a nurturing, loving and stable home for him. They have integrated the child into their family and are committed to providing him a permanent home." These caretakers were, "by deed if not by name," the child's parents. (*Angel B.*, *supra*, 97 Cal.App.4th at p. 465.) And, while the bond to the caretakers cannot be dispositive, "'the disruption of an existing psychological bond between dependent children and their *caretakers* is an extremely important factor bearing on any section 388 motion.' [Citation.]" (*In re D.R.* (2011) 193 Cal.App.4th 1494, 1512.)

Insofar as the degree to which the problem may be easily removed or ameliorated, and the degree to which it actually has been, "mother asserts that under her showing of changed circumstances, as argued above, she has learned to protect her son from abuse and to handle the stress in her life which lead to her situation with [the] father." Again, we find little in the way of changed circumstances which would rebut the presumption that adoption is in the best interests of the child, and thus warrant a modification of the challenged orders. To remove him from the only secure, stable home he had ever known would have caused chaos and uncertainty in an already uncertain life.

Under these circumstances, the juvenile court did not abuse its discretion by summarily dismissing mother's section 388 petition.

## DISPOSITION

The judgment is affirmed.


THOMPSON, J.


WE CONCUR:


O'LEARY, P. J.


MOORE, J.